IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| Thermal Investments, LLC, | | |
| Plaintiff, | | No.: |
| v. | | **COMPLAINT** |
| Roosevelt Energy, Inc., Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt, | | |
| Defendants. | | |

COMES NOW the Plaintiff, Thermal Investments, LLC, and for its Complaint against

the Defendant, Roosevelt Energy, Inc., Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark

Pohl, and Abigale Wurschmidt states as follows:

1.      This action concerns an Iowa shareholder's right to access corporate books and

records, to hold corporate directors and officers accountable in fulfilling their fiduciary duties of

loyalty and care, and to obtain redress for material misrepresentations and mismanagement. The

action is brought in law and in equity, whereby the Plaintiff seeks both monetary damages to

remedy past wrongs and specific performances to safeguard shareholder rights and ensure

competent business operation.

2.      Claims brought in this action include both direct and derivative claims. In support

of its derivative claims, Plaintiff affirmatively states:

    a.   That at all times relevant to this action, Plaintiff is a shareholder of Roosevelt

       Energy, Inc.;

    b.   That Plaintiff has made reasonable efforts, including multiple written demands to

       counsel for Roosevelt Energy, Inc., prior to the filing of this action, in a good

faith effort to resolve its concerns regarding the operation of Roosevelt Energy,

Inc. in lieu of litigation; and

c.  At least 90 days have passed since Plaintiff's written demands.

**PARTIES, JURISDICTION AND VENUE**

3.      Thermal Investments, LLC ("**Thermal Investments**") is a limited liability

company that was organized under the laws of Iowa and has its principal place of business

located in Johnson County, Iowa.

4.      The name "Roosevelt Energy, Inc." entails two separate entities as a matter of

legal reality:

a.  There is a Minnesota entity bearing the Roosevelt name, which is a company that

was first established as a limited liability company in 2012, converted into its

current corporate form in 2017, administratively dissolved in 2021, and re-

instated in 2022 ("**Roosevelt One**"). The principal place of business for this entity

is Ham Lake, Minnesota pursuant to corporate filings with the Minnesota

Secretary of State.

b.  There is simultaneously a Wyoming entity bearing the Roosevelt name, which is a

company that began its existence in around February 2020 when articles of

domestication were filed and accepted by the Wyoming secretary of State

("**Roosevelt Two**").  The principal place of business for this entity is Jackson,

Wyoming pursuant to corporate filings with the Wyoming Secretary of State.

c.  Upon information and belief, the two entities are one of the same as a matter of

operational fact, and their distinct legal existence is a result of management

2

failure to comply with corporate formalities and the applicable state laws in the process of its purported conversion, as explained further below. Roosevelt One and Roosevelt Two will be collectively referred to as "**Roosevelt**" throughout the pleadings unless specific reference to one or the other is warranted.

5.      U.S. Engineered Wood, Inc. ("**USEW**") is a corporation that was organized under the laws of Wyoming, is registered and authorized to conduct business in Iowa, and has its principal place of business located in Newton, Iowa.

6.      Upon information and belief, Brian Iverson ("**Iverson**") is a resident of Ham Lake, Anoka County, Minnesota, and a director and/or officer of Roosevelt and USEW.

7.      Upon information and belief, Michael Stilwell ("**Stilwell**") is a resident of Andover, Anoka County, Minnesota, and a director and/or officer of Roosevelt and USEW.

8.      Upon information and belief, Kevin Thoresen ("**Thoresen**") is a resident of Shakopee, Scott County, Minnesota, and a director and/or officer of Roosevelt and USEW.

9.      Upon information and belief, Mark Pohl ("**Pohl**") is a resident of Woodbury, Washington County, Minnesota, and a director and/or officer of Roosevelt and USEW.

10.     Upon information and belief, Abigail Wurschmidt ("**Wurschmidt**") is a resident of Blaine, Anoka County, Minnesota, and an officer of Roosevelt and USEW.

11.     Unless specific reference is warranted, Iverson, Stilwell, Thoresen, and Pohl are collectively referred to as the "**Roosevelt Leadership**."

12.     The amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

13.      Because of the diversity of the parties and the amount in controversy, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

14.     The Court has specific personal jurisdiction over the Defendants because the

Defendants, individually and collectively, have purposefully availed themselves of the privileges

of conducting business in the state of Iowa. Actions constituting purposeful availment include

but are not limited to the following: actively soliciting and contracting with Iowa individuals and

businesses to invest into their businesses; accepting substantial amounts of capital from Iowa

individuals and businesses; conducting manufacturing activities in the state of Iowa; selling

materials and products to Iowa individuals and businesses; and using Iowa individuals and

businesses as authorized distributors of their products. These actions are not isolated or

incidental, but intentional and continuous. The claims made by the Plaintiff arose directly from

such intentional conduct and activities. It is therefore reasonably foreseeable that Defendants

may be hailed into a court located in this State.

15.     Venue is proper in the Southern District of Iowa and the Eastern Division

pursuant to 28 U.S. Code §1391(b)(3) as the Court has personal jurisdiction over the Defendants.

## FACTUAL BACKGROUND

16.     Roosevelt is a closely-held corporation that seeks to develop and commercialize

sustainable and energy efficient building solutions.

17.     Central to Roosevelt's value and prospect as a business enterprise is its

development, testing, certifying, and ownership of all intellectual property rights related to an

innovative wall stud design bearing the trade name of "Tstud."

18.     Tstud was invented by Iverson, who is also a director, the majority shareholder,

and CEO of Roosevelt.

19.     Compared to traditional wall studs, Tstud entails a design that diminishes thermal

transfer through wall panels, increases load-bearing capacity of the walls, and affords greater

4

flexibility to builders when inserting insulation materials in the construction process. Because of its ability to reduce heating and cooling costs of building structures without compromising functionality and structural soundness, Tstud promises to revolutionize the building industry by introducing to the market a viable and environmentally efficient option.

20.    According to at least one business plan or announcement to shareholder put forth by the Roosevelt Leadership, Roosevelt has spent more than $5,000,000.00, in the span of approximately five years (from 2015 to 2020), on developing, testing, certifying and patent-protecting Tstud technology and its related products.

21.    Because of its ownership to all intellectual property rights associated with the Tstud design, Roosevelt is believed to hold the key to any and all commercialization potentials of Tstud.

22.    Relying on the strength and promise of Tstud technologies and Roosevelt's ownership of all associated intellectual property, Roosevelt has engaged in significant capital raising activities over the years across North America.

23.    The total capital Roosevelt has raised over the years is unclear:

a.    According to its Form D filings with the U.S. Securities and Exchange Commission, Roosevelt made a $3,000,000.00 offering of its securities on October 10, 2018, made a $5,300,000.00 offering on July 16, 2019, and made a $3,250,000.00 offering on December 19, 2019.

b.    Based on written representations made by Roosevelt Leadership to its shareholders, including statement referenced in paragraph 20 above, Roosevelt has raised significantly more than $5,000,000.00 in capital over the years.

24.     In or around 2019, Roosevelt offered to sell to any accredited investors up to 500,000 Common Shares at $2.00 per share.

25.     Thermal Investments became aware of the company at this juncture and Tstud technologies. Importantly, Thermal Investments was informed and was led to believe that Roosevelt was the owner of all intellectual property associated with the Tstud technologies as invented by Iverson, and that Roosevelt's business model consists of granting licenses to third-party manufacturers to produce Tstud in exchange of royalty payments, without engaging in direct or indirect manufacturing itself.

26.     Roosevelt's chosen business model has significant ramifications for both Roosevelt and its shareholders. Under the business model where Roosevelt owns intellectual property rights and profits through licensing agreements, the company would require minimal operational input (e.g., human resources, assets and liabilities, and ongoing expenses) and would presents a low risk profile. Under the business model where Roosevelt engages in direct or indirect manufacturing, by contrast, the company's operational and risk levels would deepen dramatically due to the substantial amount of resources that are needed to set up and sustain manufacturing.

27.     With the understanding that Roosevelt owned all intellectual property rights regarding Tstud and would profit through licensing agreements, Thermal Investments entered into a Subscription and Investment Representation Agreement in April 2019 to acquire 222,223 shares of Roosevelt's Common Shares, at $1.80 per share, for the total price of $400,000.00.

28.     The specific percentage of Thermal Investments ownership in Roosevelt is unknown. However, pursuant to representation made by Roosevelt's counsel on May 14, 2021,

Thermal Investments is a minority shareholder of Roosevelt and holds less than five percent (5%) of its outstanding shares.

## Manufacturing Roll-Out

29.     Following its acquisition of shares in Roosevelt, Thermal Investments received periodic updates regarding Roosevelt's business trajectory and operation.

30.     Contrary to prior representations whereby Roosevelt was to refrain from direct or indirect manufacturing, these updates informed shareholders that Roosevelt was engaging in substantial and ongoing effort to build up its infrastructure and capacity to manufacture, distribute, and market various lines of Tstud products.

31.     Among other things, the following information was relayed to the Roosevelt shareholders through these updates:

   a.   In or around June 2019, Roosevelt made a formal offer to Titan Manufacturing, located in Fort Frances, Ontario, to acquire their manufacturing business and was in advanced discussions with NextGen, an Australian coating company, for a license to apply NexGen coatings to all Tstud and other products to be made at the Titan location.

   b.   In or around August 2019, Roosevelt had two product lines ready for launching, R20 Tstud and BareNaked Tstud and was projecting net profit of $450,000 monthly ($225,000 for each of the two production lines).

   c.   In January 2020, REI established USEW, a wholly owned subsidiary at its inception, and dedicated the entity to the manufacturing, distribution, and sale of Tstud products in the United States and Canada.

d. As of May 5, 2020, "[l]ong term supply agreements for lumber commodities, environmentally advantageous polysio foam, dowel materials, and the fire, rot, mold, and termite treating products [were] in place or underway" and that USEW was "unable to keep up with customer demand."

e. By around July 2020, two additional production lines were launched in Nowthen, Minnesota, each having the capacity of manufacturing 10.25 lineal feet of BareNaked product per minute. Additionally, at least 9 semi loads of Tstuds were ordered by certain lumber companies, and distribution agreements had been entered into or were being worked out with various companies across the United States including retail outlets such as Lowes, Menards, and Home Depot.

f. At some point, USEW established Engineered Wood of Canada to engage in additional production.

g. In or around October 2020, USEW leased a plant in Newton, Iowa. Four semi-truck loads of manufacturing equipment, the output speed for some of which was allegedly increased by 154%, were delivered to the location, ready to be used for production.

h. As of May 2021, additional equipment were ordered to manufacture new lines of Tstud products including but not limited to HeavyTimber Tstud in the 8" and the 12" box configurations, MiniTstud, and R19 Tstud™ up to 16' lengths at the Newton location. Furthermore, "USEW [was] starting to distribute across the country," was "working with a 30 unit apartment building in Denver," was "in the middle of a build with BASF and Neopor foam building the World's Most Energy

Efficient Accessory Dwelling Unit," and "sold a semi load of BareNaked Tstud[TM] into Regina Saskatchwan to a distributor…"

i.  In September 2021, USEW established Century Wall Panels, Inc. to build wall panels in residential homes, after receiving hundreds of phone calls requesting pre-assembled wall panels with Tstud products.

j.  In October 2021, USEW established Century Home Innovations, Inc., later named Century Building Innovations, Inc. to manufacture wall, roof, and floor panels with Tstuds products.

k.  In July 2022, USEW established Innovated Structures, Inc. to convert products produced by Century Building Innovations, Inc. into fully finished livable unit.

l.  By August 2022, Century Building Innovations, Inc. had a project on its books concerning the construction of a 12,000 square feet commercial building in Ham Lake, Minnesota.

32.     In summary, through its regular updates, Roosevelt Leadership did not simply project an optimistic but ultimately aspirational future to Roosevelt's shareholders, but portrayed a state of success that was substantiated with specific claims of facilities built, contracts acquired, and customers obtained on the scale of North America.

33.     On November 7, 2022, Thermal Investments attended a virtual shareholder meeting, which was the first meeting for which it received notification since it became a shareholder to Roosevelt.

34.     During this meeting, various representations were made by Pohl, successor to Iverson as the Roosevelt CEO, that were in stark contrast with representations provided by the Roosevelt Leadership in the preceding years. Among other things, Pohl stated:

a.   Roosevelt's previous manufacturing partner in Canada proved to be unreliable and the relationship in fact failed, forcing production to be made through USEW and the plant to be relocated to Newton, Iowa;

b.   Only one line of product, the BareNaked Tstud line, was in fact being produced for the better part of the last two years;

c.   Roosevelt only had one production facility, the one located in Newton, Iowa facility;

d.   Roosevelt's only source of income was USEW, which was obligated to pay royalties for every foot of Tstud produced and was obligated to make payment on equipment it had purchased from Roosevelt pursuant to certain "seller financed equipment note";

e.   A total of approximately $3,000,000.00 had been invested into Roosevelt from its inception to the date of the meeting; and

f.   Roosevelt's net assets as of the third quarter of 2022, which included its patents, cash in hands, accounts receivable, and promissory note from USEW for the equipment sale, only amounted to $1,309.991.

These representations effectively revealed that the manufacturing roll-out, touted as a success in the preceding years, had been a failure.

35.   Two months later, in January 2023, Iverson called an emergency shareholder meeting in his capacity as Roosevelt's majority shareholder.

36.   Prior to and during the meeting, which occurred on January 2, 2023, Iverson made even more alarming representations to Roosevelt shareholders about the actual conditions of Roosevelt as well as that of USEW.

37.     Roosevelt and USEW, as it turned out, had been in dire financial straits and were in urgent need of emergency cash injections, without which they could be "foreclosed" on by the creditor(s). Specifically, Iverson represented that:

a. USEW had defaulted on its loan payment to Roosevelt for the purchase of Roosevelt's manufacturing equipment, had defaulted on its royalty payment to Roosevelt, had defaulted on its lease payment (presumably related to the facility located in Newton, Iowa), and had defaulted on certain credit card account;

b. Roosevelt had defaulted on its payment obligation to SBA for the loan it took out or co-signed to finance USEW's equipment, had defaulted on attorney's fees and credit card debt, and had defaulted on certain loans Iverson personally made to the company; and

c. Iverson, as the creditor, had the right to initiate foreclosure on Roosevelt but would not pursue that option assuming the urgently needed cash injection promptly occur.

38.     Furthermore, Iverson provided the following specifics regarding the manufacturing roll-out:

a. Roosevelt had invested $800,000 in some machine to manufacture Tsutd products but the  machine would not function properly;

b. The BareNaked line of Tstud, previously boasted as an innovation that was met with high demand, was in fact born out of desperation during the pandemic supply chain shortage and had an extremely limited market;

c. USEW's Newton plant apparently had not been operating due to lack of cash; and

d.  It was imperative that Roosevelt shareholders devise and put in place exit strategies and plans.

39.     No intelligible reason was provided to explain the utter and sudden collapse of the manufacturing built-up the Roosevelt Leadership had purportedly accomplished over the years, which included the establishment of multiple product lines, multiple manufacturing locations, and nation-wide contractual relationship with suppliers and customers.

40.     The representations made in the November 2022 and January 2023 shareholder meetings are irreconcilable with representations the Roosevelt Leadership had provided in the prior years.

**Pervasive Conflicts of Interest**

41.     On or around January 9, 2020, Roosevelt Leadership incorporated USEW under the laws of Wyoming.

42.     According to its Business Plan dated May 5, 2020, USEW was a wholly owned subsidiary of Roosevelt and was to become its manufacturing arm in North America.

43.     Significant overlap exists between the decision-making bodies of Roosevelt and USEW. Specifically, filings with Iowa and Wyoming Secretaries of State identify the following individuals as the two entities' respective decision-making personnel:

|  | **Roosevelt One** | **Roosevelt Two** | **USEW** |
|---|---|---|---|
| **Directors** | Brian Iverson<br>Michael Stilwell<br>Kevin Thoresen |  | Brian Iverson<br>Michael Stilwell<br>Mark Pohl |
| **Officers** | Michael Stillwell (President)<br>Mark Pohl (Treasurer)<br>Abigale Wurschmidt (Secretary) |  | Michael Stillwell (President)<br>Brian Iverson (Vice President)<br>Mark Pohl (Treasurer)<br>Abigale Wurschmidt (Secretary) |

| | N.B. Brian Iverson (CEO) [1] | N.B. Mark Pohl (CEO)[2] |
|---|---|---|

44.     Because of the substantial overlap identified above, no disinterested, arms-length transaction between the two entities is possible.

45.     Since USEW came into existence, various transactions or arrangements that are *prima facie* to the detriment of Roosevelt were advanced and allowed to occur, without due consideration of any potential or actual competing interests between the two entities. For instance:

  a.   Roosevelt, after allegedly investing approximately $2,500.000.00 into building or acquiring equipment needed to make Tstud products, decided to "give" such equipment to USEW to jump start its operation, as stated in one letter to the Roosevelt shareholders.

  b.   Additionally, a $1,500,000.00 loan was obtained from United States Small Business Administration for the purpose of financing additional equipment for USEW's Newton plant. Said loan was signed by not only USEW but also by Roosevelt and Iverson, with the entirety of Roosevelt's assets pledged as collateral.

  c.   After transferring the equipment to USEW and co-signing the SBA loan, Roosevelt continued to be an obligor on the loan to this date.

---

[1] Neither Iowa nor Wyoming's secretaries of state filings indicate the identities of the CEO for the respective companies.  However, during Roosevelt's shareholder meeting on November 7, 2022, Mark Pohl represented that he had been serving as Roosevelt's CEO since August 2022, in succession of Iverson, and was also the CEO for USEW. During Roosevelt's emergency shareholder meeting on January 2, 2023, Iverson appeared to have restored himself as the CEO for Roosevelt.

[2] *Id.*

    d.   Despite the purported plan for USEW to assume all manufacturing, distribution, and sale, Roosevelt engaged in additional capital-raising activity with the goal of obtaining $3,250,000.00 to "fast track all testing of various Tstud products and to finalize all reports necessary to begin production and to begin the sales process."

46.    While Roosevelt poured in its resources into USEW to build up the latter's manufacturing capacity, USEW started engaging in substantial capital-raising activities of its own:

    a.   At its inception, USEW was wholly owned by Roosevelt.

    b.   According to USEW's Form D filings with the SEC, USEW offered $2,000,000 of its securities and sold $200,000.00 in or around February 2020, and then amended the offering in June 2020 to $7,000,000.00 and sold $5,050,000.00.

    c.   As of August 17, 2022, Roosevelt's ownership shrank to approximately 80%. As of January 2023, it shrank further to 75%.

    d.   Pursuant representations made in the November 2022 shareholder meeting, USEW is in the process of raising significantly more money from institutions and private persons alike.

The capital raising by USEW effectively dilutes Roosevelt's ownership in USEW and the worth of its ownership.

47.    The conflicted conduct of the Roosevelt Leadership did not stop with USEW.

48.    On August 7, 2022, Iverson informed Roosevelt shareholders that he had incorporated a new entity, Innovated Structures, Inc., to hold additional patents that he may obtain for inventions and designs he had made in the space of sustainable building solutions.

49.     On August 17, 2022, Iverson informed Roosevelt shareholders that he had incorporated yet another a new entity, Tanager Products, Inc., to hold additional patents that he may obtain for inventions and designs he had made in the space of sustainable building solutions.

50.     A cursory review of the business plans for Innovated Structures, Inc. and Tanager Products. Inc. shows that Tstud technology remains at the heart of any additional inventions that Iverson plans to associate with his two new companies.

51.     Put differently, Innovated Structures, Inc. and Tanager Products, Inc. are expected to own intellectual property rights that would allow them to engage in direct competition with Roosevelt, and profit from intellectual property rights created by Iverson while he serves as an officer, director, and majority shareholder of Roosevelt.

52.     Indeed, during the January 2, 2023 emergency shareholder meeting, Iverson stated that Innovated Structures, Inc., for which he is the Founder and the CEO, would "beat us at our game" through its inventions such as WarmStud and MetalTstud, and then urged Roosevelt shareholders to invest in that entity to seize the "crazy opportunity."

53.     On January 13, 2023, through an email calling for investments, Iverson stated that he had "moved all of his patents" to Innovated Structures, Inc.

54.     Thermal Investments is aware of no properly passed corporate resolution by Roosevelt to transfer ownership of its patents to Iverson, let alone transferring ownership to a competing company.

55.     Because intellectual property rights lies at the heart of Roosevelt, it is unclear if Roosevelt's value has been completely decimated at this time.

56.     On February 22, 2023, Iverson called for and held another shareholder meeting, this time a joint one for the shareholders of both Roosevelt and the newly created Tanager Products, Inc. Among other things, Iverson informed the two groups of shareholders:

  a.   That the first order of business was to get USEW "back to the black" and all the companies were working together to "help out" USEW;

  b.   That all attendees and anyone they knew could and were indeed encouraged to purchase a license to produce Tstud products at this time (despite a previous license from Roosevelt to USEW that was purportedly an exclusive one); and

  c.   That Roosevelt, Tanager Products, Inc., and Innovated Structures, Inc. were "all looking at being able to form a corporation in Europe … for all of the products to fall under one roof."

### Opaque Corporate Governance

57.     Underlying the issues of misrepresentations and conflicts of interest as identified above is the perennial and systematic failure of the Roosevelt Leadership to follow company bylaws, the applicable state laws, and general principles for corporate governance.

58.     Since becoming a Roosevelt shareholder, Thermal Investments has experienced extreme difficulty in obtaining any meaningful information to ascertain the operational and financial reality of the company.

59.     On January 24, 2019, Roosevelt allegedly convened a special shareholder meeting and passed a resolution, purportedly approved by the majority shareholders, to dissolve Roosevelt One and to domesticate the company in Wyoming.

60.     Contrary to both company bylaws and Minnesota laws, Thermal Investments never received any notification regarding said special meeting. It is unclear which shareholders

did receive notification, whether a quorum was in fact present, and whether the resolution was in fact approved.

61.    On February 27, 2019, the Roosevelt Leadership caused a "Foreign Profit Corporation Articles of Domestication" to be filed in the state of Wyoming to establish Roosevelt Two and one day later, filed a "Notice of Intent to Dissolve" in the state of Minnesota.

62.    Inexplicably, on January 11, 2022, the Roosevelt Leadership filed an "Annual Restatement" in Minnesota to reactivate Roosevelt One.

63.    With no knowledge of the purported conversion, Thermal Investments had no opportunity to exercise a dissenter's right as guaranteed by Minnesota law, which includes the right to object to the conversion and obtain payment for the fair value of its shares at the time of conversion.

64.    It was only when Thermal Investments, through counsel, wrote to Roosevelt Leadership and counsel to request inspection of corporate books and records that it was informed of the purported conversion while being told that as a holder of less than 5% Roosevelt shares, Thermal Investments had limited right to access corporate records under Wyoming laws.

**COUNT I**
**COMMON LAW FRAUD**

65.    Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66.    In or around April 2019, Defendants made certain representations to Thermal Investments regarding Roosevelt, including but not limited to Roosevelt's ownership of all intellectual property rights associated with Tstud technologies, and Roosevelt's plans and prospect of commercialization of such intellectual property rights.

17

67.     In subsequent years, Defendants continue to make representations about Roosevelt, including but not limited its investment and effort in securing Roosevelt's intellectual property rights surrounding Tstud, the market demand for Tstud, the specific steps it engaged in to build up the manufacturing infrastructure for Tstud, and the contractual relationships it entered into with suppliers and customers.

68.     Defendants' misrepresentations were also accompanied by withholding of material information, including information regarding the company's purported conversion, the Company's dire economic circumstances, and the market reality facing its products.

69.     Such misrepresentations or failures to disclose were material because the information at issue directly impact the value and prospect of the Roosevelt venture.

70.     Thermal Investments relied on the veracity of the Defendants' representations to first acquire Roosevelt shares and to then continue its holding of such shares.

71.     As a result of Defendants material misrepresentation or failure to disclose objective and concrete facts, which is distinct from opinion or conjecture, Plaintiff has suffered serious economic loss.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment against the Defendants, Roosevelt Energy, Inc., Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt in an amount that adequately compensate the full extent of economic losses suffered by the Plaintiff, or in the alternative order the contract whereby Plaintiff acquired shares to be rescinded; award attorney's fees based on principles of equity and applicable common law exceptions; and issue any other relief as may be warranted by the applicable laws.

**COUNT II**
**VIOLATION OF ANTI-FRAUD PROVISIONS**
**OF SECURITIES EXCHANGE ACT OF 1934**

72.     Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 71 as if fully set forth herein.

73.     In or around April 2019, Defendants made representations to Thermal Investments regarding Roosevelt, including but not limited to Roosevelt's ownership of all intellectual property rights associated with Iverson's Tstud inventions and its business model whereby the company would profit through licensing agreements without engaging in manufacturing.

74.     Contrary to these representations, Defendants subsequently engaged in direct and/or indirect manufacturing, drastically changing Roosevelt's assets and liabilities composition and risk profile for the worse.

75.     Moreover, in or around January 2023, Iverson transferred all his intellectual property rights pertaining to Tstud from Roosevelt to a new entity of his creation that is independent from Roosevelt.

76.     Defendants' representations were material and false.

77.     Such misrepresentations were made intentionally or, at the minimum, recklessly.

78.     Thermal Investments relied on such representations in making purchase of Roosevelt's common shares.

79.     As a result of Defendants' misrepresentations, Thermal Investments suffered economic damages, which includes the difference between the price paid to acquire common shares and the true value of those shares at the time of purchase.

80.     The Defendants' actions are in violation of Rule 10b-5, 17 C.F.R. §240.10b-5, adopted under Section 10(b) of the Securities Exchange Act of 1934.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment against the Defendants, Roosevelt Energy, Inc., Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt in an amount that adequately compensate the full extent of economic losses suffered by the Plaintiff, and issue any other relief as may be warranted by the applicable laws.

## COUNT III
## VIOLATION OF IOWA SECURITIES ACT

81.     Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

82.     In or around April 2019, Defendants made representations to Thermal Investments regarding Roosevelt, including but not limited to Roosevelt's ownership of all intellectual property rights associated with Iverson's Tstud inventions and its business model whereby the company would profit through licensing agreements without engaging in manufacturing.

83.     Contrary to these representations, Defendants subsequently engaged in direct and/or indirect manufacturing, drastically changing Roosevelt's assets and liabilities composition and risk profile for the worse.

84.     Moreover, in or around January 2023, Iverson transferred all his intellectual property rights pertaining to Tstud from Roosevelt to a new entity of his creation that is independent from Roosevelt.

85.     Defendants' representations were material and false.

86.     Such misrepresentations were made intentionally or, at the minimum, recklessly.

87.     Thermal Investments relied on such representations in making purchase of Roosevelt's common shares.

88.     As a result of Defendants' misrepresentations, Thermal Investments suffered economic damages, which includes the difference between the price paid to acquire common shares and the true value of those shares at the time of purchase.

89.     The Defendants' actions are in violation of Iowa Code section 502.509.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment against the Defendants, Roosevelt Energy, Inc., Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt in an amount that adequately compensate the full extent of economic losses suffered by the Plaintiff, award attorney's fees pursuant to Iowa Code section 502.509, and issue any other relief as may be warranted by the applicable laws.

## COUNT IV
## BREACH OF CONTRACT

90.     Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91.     Thermal Investments was provided with a copy of Roosevelt's Bylaws when it became a shareholder in April 2019.

92.     The Bylaws prescribed various rules and procedures that shall govern the operation of the company, including but not limited to the holding of regular and special meetings of shareholders and directors, notification requirements, the selection and tenure of directors and officers, and transfer of shares.

93.     The Defendants repeatedly failed to comply with the Bylaws, disregarding corporate formalities and procedures during their operation of Roosevelt.

94.     Among other things, the Defendants failed to notify Thermal Investments of its purported dissolution of Roosevelt One.

95.     Such failure directly caused the forfeiture of Roosevelt Investment's opportunity to exercise a dissenter' rights as guaranteed by Minnesota laws.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment against the Defendants, Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt, in an amount that adequately compensate the full extent of economic losses suffered by the Plaintiff, and issue any other equitable relief as the Court deems appropriate and necessary.

## COUNT V
## BREACH OF FIDUCIARY DUTY

96.     Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97.     The individual Defendants named in this action, consisting of directors, officers, and/or majority shareholders of Roosevelt, owe Roosevelt and its shareholders a fiduciary duty of care and loyalty.

98.     In contravention to their duty of care, the Defendants failed to keep proper corporate records and failed to abide by corporate procedures and formalities, rendering meaningful shareholder oversight impossible.

99.     In contravention to their duty of loyalty, the Defendants engaged in repeated self-dealing and competing business ventures, pursued business opportunities that should have belonged to or been offered to Roosevelt, and engaged in other transactions to the detriment of Roosevelt.

100.     Defendants' actions have irretrievably damaged Roosevelt.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment against the Defendants, Brian Iverson, Michael Stilwell, Kevin Thoresen, Mark Pohl, and Abigale Wurschmidt, in an amount that adequately compensate the full extent of losses suffered by Roosevelt Energy, Inc., and issue appropriate equitable relief as the Court deems appropriate and necessary.

## COUNT VI
## EQUITABLE RELIEF UNDER MINN. STAT. §302A.751

101.     Thermal Investments hereby repleads the allegations contained in paragraphs 1 through 100 as if fully set forth herein.

102.     Roosevelt is a closely held corporation.

103.     Thermal Investments is believed to be a minority shareholder, holding less than 5% of the outstanding shares of Roosevelt.

104.     The Defendants have acted in a manner that is contrary to Roosevelt Bylaws and contrary to their fiduciary duties as they exist under both common law and the applicable corporate statutes, which actions are unfairly prejudicial to the interests of Roosevelt.

105.     Among other things, Roosevelt's continued and simultaneous listing as an active Minnesota corporation and active Wyoming corporation both creates legal uncertainties as to the ongoing governance of the company and exposes the company to legal risks and liabilities from third parties.

106.     Similarly, the continued overlap between Roosevelt and USEW decision-making bodies exposes Roosevelt to risks and liabilities from both current and future investors.

107.     Legal remedies will not adequately remedy these wrongs.

108.     Minnesota Statutes section 302A.751 was enacted in an effort to protect minority shareholders in closely held corporation and affords such shareholders equitable remedies to avoid unfair prejudice to their rights.

109.     To protect minority shareholders' interests in Roosevelt, the directors of Roosevelt must be ordered to (a) provide full accounting of the company's financial circumstances and business operation, (b) to convene a special shareholders' meeting to remedy its defective conversion into a Wyoming corporations and to evaluate, approve, or modify past transactions where conflict of interests existed, and (d) to re-configure its leadership composition to ensure transparent operation in compliance with internal governance documents and external laws and regulations.

WHEREFORE the Plaintiff, Thermal Investments, LLC, prays that the Court enter a judgment ordering specific equitable reliefs to allow proper governance of Roosevelt and to protect minority shareholder rights.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues in this matter.

*/s/ Samuel E. Jones*
SAMUEL E. JONES          AT0009821
SHUTTLEWORTH & INGERSOLL, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:        (319) 365-9461
FAX:            (319) 365-8564
E-mail:  sej@shuttleworthlaw.com

*/s/ Weijing Wu*
WEIJING WU                    AT0012953
SHUTTLEWORTH & INGERSOLL, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:        (319) 365-9461
FAX:          (319) 365-8564
E-mail:  wjw@shuttleworthlaw.com

ATTORNEYS FOR PLAINTIFF